UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Seneca Re-Ad Industries, Inc.,                              Case No. 3:20-cv-2325

            Plaintiff,

      v.                                            MEMORANDUM OPINION
                                                    AND ORDER

Secretary of the Department of Labor, *et al.*,

            Defendants.

## I.     INTRODUCTION

Before me are cross motions for summary judgment filed by Plaintiff Seneca Re-Ad Industries, Inc., (Doc. No. 34), and Defendants the Secretary of the United States Department of Labor (the "DOL") and the DOL Administrative Review Board ("ARB"). (Doc. No. 36). Defendant-Intervenors Ralph "Joe" Magers, Pamela Steward, and Mark Felton (collectively, "Employees") filed a brief in opposition to Plaintiff's motion. (Doc. No. 37). Plaintiff filed a brief in reply in support of their motion, opposing Defendants' motion, and responding to the Employees' brief. (Doc. No. 39). For the reasons stated below, I deny Plaintiff's motion and grant Defendants' motion for summary judgment.

## II.     BACKGROUND

I previously summarized the background of this litigation in granting the Employees' motion to intervene:

> In November 2015, Movants, through Disability Rights Ohio ("DRO"), filed a Petition for a Review of Wages with the Department of Labor, asserting their employer – Plaintiff – was unlawfully paying them subminimum wages.

> After conducting the hearing, performing a site visit, and reviewing the briefs of the parties, an Administrative Law Judge (the "ALJ") issued his decision finding Plaintiff violated the Fair Labor Standards Act ("FLSA") by paying Movants subminimum wages because Plaintiff could not show Movants were impaired for the work performed. (Doc. No. 1-2). The ALJ also determined the FLSA's two-year statute of limitations was inapplicable to the administrative proceedings and, therefore, Movants' eligible damages spanned their term of employment and were not restricted to merely those damages incurred within the limitations period.
>
> Movants had not submitted evidence of their wages prior to December 28, 2012, leading the ALJ to award Movants statutory liquidated damages and unpaid wages, calculated based on the Ohio minimum wage, for the period of December 28, 2012 through December 25, 2015. Plaintiff then sought review of the ALJ's decision by the Administrative Review Board ("ARB").
>
> On January 12, 2017, the ARB issued its decision upholding the ALJ's conclusions as to Plaintiff's liability, the inapplicability of the statute of limitations, and Movants' entitlement to liquidated damages. (Doc. No. 1-3). But the ARB found the ALJ erred in calculating the damages based upon Ohio, rather than federal, minimum wage law and remanded the matter, ordering the ALJ to recalculate the damages based on federal minimum wage law. (*Id.*).
>
> On remand, the ALJ allowed Movants to reopen the record to add proof of damages incurred from the beginning of their employment through December 27, 2012 ("Period 1") and those incurred during the 38-day period beginning with the Department of Labor hearing through the February 2, 2016 decision when Plaintiff began paying Movants minimum wage ("Period 3"). (Doc. No. 1-4). The ALJ then recalculated Movants' unpaid wages for the period between December 28, 2012 and December 25, 2015 ("Period 2") based on the federal minimum wage. Ultimately, the ALJ awarded Movants liquidated damages and unpaid wages based on the federal minimum wage for Periods 1 through 3.
>
> Plaintiff again sought review of the ALJ's decision, arguing the ALJ erred in reopening the record, awarding damages for Period 1, and awarding liquidated damages altogether. Plaintiff also asserted for the first time that the ALJ's decision must be vacated because he was not properly appointed under the Appointments Clause of the United States Constitution. The ARB rejected each of these arguments and affirmed the ALJ's decision on September 14, 2020. (Doc. No. 1-6).
>
> Following this second decision, Plaintiff filed this action pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*, and 29 C.F.R. § 525.22, appealing both ARB decisions. (Doc. No. 1).

(Doc. No. 17 at 1-3).

After I granted their motion to intervene, the Employees filed a Counterclaim seeking entry of judgment in their favor in the full amount of the back pay and liquidated damages awarded during

the administrative proceedings. (Doc. No. 19). I subsequently ordered Plaintiff pay the Employees the amount due, to secure a bond in an equal amount, or to file a motion to stay enforcement of the agency action. (Doc. No. 31). Plaintiff then filed a supersedeas bond in the amount of $87,026.64 as security while these proceedings are ongoing. (Doc. No. 32).

Plaintiff now moves for summary judgment, challenging the ALJ's appointment and seeking "to invalidate the decisions and orders made by" the ALJ and the ARB. (Doc. No. 34 at 5). Plaintiff also moves for an order requiring the DOL to assign the administrative proceedings to a new ALJ on remand. Defendants argue I instead should affirm the ARB's decision and enter summary judgment in their favor.[1] (Doc. No. 36).

### III. DISCUSSION

#### A. APPOINTMENTS CLAUSE CHALLENGE

I first consider Plaintiff's Appointments Clause argument because this argument, if correct, would make it unnecessary for me to resolve the parties' remaining disputes.

The Appointments Clause of the United States Constitution "prescribes the exclusive means of appointing 'Officers'" of the United States. *Lucia v. S.E.C.*, 585 U.S. ---, 138 S. Ct. 2044, 2051 (2018) (quoting U.S. Const. art. II, § 2, cl. 2). That clause declares "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. ALJs within federal agencies typically are considered to be "Officers" who must be appointed pursuant to the Appointments Clause. *See, e.g., Lucia*, 138 S. Ct. at 2049 (holding ALJs of the Securities and Exchange Commission

---

[1] "Although a request for review of a federal agency action is generally brought to the court on cross-motions for summary judgment, courts conducting judicial review under the APA do not follow the standard set forth in Fed. R. Civ. P. 56. Instead, their standard of review is set by the terms of the APA." *Ohio v. United States Army Corps of Eng'rs*, 259 F. Supp. 3d 732, 744 (N.D. Ohio 2017).

qualify as "Officers"); *Jones Bros. Inc. v. Sec'y of Labor*, 898 F.3d 669, 679 (6th Cir. 2018) (holding ALJs with the Federal Mine Safety and Health Review Commission, an agency within the DOL, are "Officers" under the Appointments Clause); *Nat'l Mines Corp. v. Conley*, 790 F. App'x 716, 717-18 (6th Cir. 2019) (noting DOL ALJs must be appointed by the Secretary of Labor rather than DOL staff members) (citations omitted).

Plaintiff contends "[t]here is no dispute that the ALJ was not properly appointed in accordance with the United States Constitution," and therefore the administrative proceedings were "void and of no effect." (Doc. No. 34 at 22, 24). The ARB rejected Plaintiff's Appointments Clause argument as waived because Plaintiff did not first bring that argument to the ALJ. (Doc. No. 1-6 at 6). Plaintiff argues the Code of Federal Regulations did not require Plaintiff to exhaust its Appointments Clause claim by first presenting it to the ALJ before appealing to the ARB. (Doc. No. 39 at 15-16). This argument is not persuasive.

As Defendants note, (Doc. No. 36 at 34), the Code of Federal Regulations requires each party to file a prehearing statement with the ALJ specifically listing "[t]he issues of law to be determined with reference to the appropriate statute, regulation, or case law." 29 C.F.R. § 18.80(c)(2). *See also id.*, § 18.80(c)(3) (requiring parties to provide "[a] precise statement of the relief sought"). Provisions such as these "require parties to identify specific issues" for review. *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 750 (6th Cir. 2019). It was not enough for Plaintiff to raise its Appointments Clause challenge before the ARB; instead, it was required to raise that claim at the earliest possible time and at each level of review. *Joseph Forrester Trucking v. Dir., Off. of Workers' Comp. Programs*, 987 F.3d 581, 590 (6th Cir. 2021) ("Consider a baseball analogy. Just like a runner must tag every base before running to home plate, a party must touch each base of the preservation process during the administrative and court proceedings.").

Plaintiff also asserts any failure to exhaust should be excused because it properly raised its Appointments Clause challenge before the ARB, as "a challenge made to the ALJ would have been futile." (Doc. No. 39 at 15). But the United States Court of Appeals for the Sixth Circuit already has rejected this argument in substantially similar circumstances. In *Joseph Forrester*, the Sixth Circuit noted "an Appointments Clause challenge is, at bottom, an as-applied constitutional challenge . . . [that] ALJs can entertain" and remedy by ordering reassignment to a constitutionally appointed ALJ. 987 F.3d at 591 (citations omitted).

Plaintiff fails to show the ARB erred in determining it waived its Appointments Clause challenge by failing to raise that challenge during the initial proceedings before the ALJ. *Cf. id.* at 592 (noting "Appointments Clause challenges . . . were available before *Lucia*"). Plaintiff's failure to exhaust its administrative remedies bars it from pursuing such a challenge in this litigation as well. Therefore, I conclude Plaintiff is not entitled to summary judgment on this basis.

B. REVIEW OF ADMINISTRATIVE DECISION

The Administrative Procedures Act (the "APA") "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992). The APA provides that "the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. An "'agency action' includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof . . . ." *Id.* § 551(13). *See also Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001) (noting agency action "is meant to cover comprehensively every manner in which an agency may exercise its power").

5

In part, the APA directs courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ." 5 U.S.C. § 706(2)(A).

> As a general matter, agency action is arbitrary or capricious if "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Meister v. U.S. Dep't of Agric.*, 623 F.3d 363, 371 (6th Cir. 2010) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

The APA sets forth a "narrow standard of review" under which "a court [may] not to substitute its judgment for that of the agency . . . and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (citations and internal quotation marks omitted). The agency's role is "to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quoting *Occidental Eng'g Co. v. I.N.S.,* 753 F.2d 766, 769 (9th Cir. 1985)) (further citations omitted).

Further, the APA requires that courts "give considerable weight and due deference to the [DOL's] interpretation of the statutes it administers unless its statutory construction is plainly unreasonable." *Bhd. of Locomotive Eng'rs v. I.C.C.*, 909 F.2d 909, 912 (6th Cir. 1990) (citing *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291-92 (1988); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 842-44 (1984)). "'To satisfy this standard it is not necessary for a court to find that the agency's construction was the only reasonable one or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.'" *Crounse Corp. v. I.C.C.*, 781 F.2d 1176,

6

1183 (6th Cir. 1986) (quoting *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.,* 454 U.S. 27, 39 (1981)).

### 1. Payment of Sub-Minimum Wages

#### a. The DOL's Decision

The FLSA generally requires employers to pay their employees an hourly wage of at least $7.25. 29 U.S.C. § 206(a)(1) (setting effective rate as of 2009). There are limited exceptions to this requirement, including one found in § 214(c). That subsection, which sometimes is referred to as the FLSA's Disabled Workers Exception Provision, (*see* Doc. No. 1-3 at 3), provides:

> The Secretary, to the extent necessary to prevent curtailment of opportunities for employment, shall by regulation or order provide for the employment, under special certificates, of individuals . . . whose earning or productive capacity is impaired by age, physical or mental deficiency, or injury, at wages which are--
>
> (A) lower than the minimum wage applicable under section 206 of this title,
>
> (B) commensurate with those paid to nonhandicapped workers, employed in the vicinity in which the individuals under the certificates are employed, for essentially the same type, quality, and quantity of work, and
>
> (C) related to the individual's productivity.

29 U.S.C. § 214(c). Certificates issued pursuant to this statute are known as "Section 14(c) certificates." (*See* Doc. No. 34 at 11; Doc. No. 36 at 29).

Plaintiff applied for and received a Section 14(c) certificate. (*See* Doc. No. 1-3 at 4 ("Seneca Re-Ad . . . is a nonprofit that contracts with the Seneca County (Ohio) Board of Developmental Disabilities to, among other things, provide employment for those with developmental disabilities" and held a Section 14(c) certificate.)). Plaintiff's facility is located within a factory owned by Roppe Industries, which manufactures rubber flooring and other products. (*Id.*).

Plaintiff paid different hourly rates to different workers based upon the workers' productivity. As required by its Section 14(c) certificate, Plaintiff:

> (1) established a prevailing wage rate for the work based on an annual survey of comparable jobs in Seneca County; (2) from time to time, established a "production standard" by testing a nondisabled worker (the "standard setter") to determine how quickly the standard setter could perform the work; (3) once every six months, determined an employee's production rate by testing each employee to determine how quickly she or he could perform the work; and then (4) took the ratio of a given employee's production rate to the "production standard" and multiplied that ratio by the prevailing wage.

(*Id.*).

The Employees are individuals with disabilities.[2] Their rate of pay for hourly positions was always below the federal minimum wage during the period in question. (*Id.*). On November 17, 2015, they filed a petition for review of their wages pursuant to § 214(c)(5) and 29 C.F.R. § 525.22. The ALJ held a hearing, visited Plaintiff's facility, received post-hearing briefing, and ultimately granted the Employees' petition.

The ARB affirmed the ALJ's finding that Plaintiff could not rely on its Section 14(c) certificate to pay the Employees less than minimum wage because Plaintiff failed to show there was a causal connection between the Employees' disabilities and their respective productive capacities. (Doc. No. 1-3 at 9-19). More precisely, the ARB held Plaintiff did not carry its burden to show the Employees' earning or productive capacity is impaired by their disabilities: "The statute does not permit the paying of a subminimum wage to all disabled individuals, only to those whose earning or productive capacity is in fact impaired *by* their disability." (*Id.* at 9) (emphasis in original). The ARB continued:

> The Department of Labor's regulations define a "worker with a disability" as "an individual whose earning or productive capacity is impaired by a physical or mental disability . . . *for the work to be performed*." The term "worker with a disability" is thus a term of art specifically for the subminimum wage program. Importantly, the regulations do not define a "worker with a disability" as simply "a worker who has a disability" or a "disabled worker." Instead, only an individual whose physical or mental disability impairs his or her earning or productive capacity "for the work to be performed" can satisfy the definition of a "worker with a disability." Thus, within

---

[2] The ARB noted "Magers is legally blind, Steward is blind in one eye and has been diagnosed with an intellectual disability, and Felton has Asperger's Syndrome." (Doc. No. 1-3 at 4).

8

>
> the meaning of the regulations, the individual's "physical or mental disability" must be the cause of the reduced productivity "for the work to be performed."

(*Id.* at 10) (citing 29 C.F.R. § 525.3(d)) (emphasis and ellipsis by the ARB).

During the hearing before the ALJ, Plaintiff presented evidence showing that the Employees were less productive than workers without a disability. The ALJ was notably dismissive of Plaintiffs' evidence. (*See* Doc. No. 1-2 at 33-34) (stating "it seemed as though a scripted narrative was being played out" in describing his impression of the testimony of Plaintiff's witnesses). The ARB was less critical but reached the same conclusion – that Plaintiff's evidence did not establish "that the disabled individual's disability is the reason for the lower productivity." (Doc. No. 1-3 at 14). Thus, Plaintiff could not rely on its Section 14(c) certificate to claim an exemption from paying the Employees the minimum wage set by § 206.

### b. Plaintiff's Challenges to the DOL's Decision

Plaintiff offers two principal challenges to the ARB's decision. The first is that the ALJ's decision and the ARB's affirmance "constitutes improper rule making" by creating "a new evidentiary standard that did not previously exist" and was "contrived out of whole cloth." (Doc. No. 34 at 11, 12, and 13). This argument is not persuasive. The ARB's decision did not impose a new rule. Instead, the ARB confronted "important questions of first impression," (Doc. No. 1-3 at 9 n.30), and provided its interpretation of the relevant statutory and regulatory language.

That interpretation is entitled to "considerable weight and due deference" because it is not "plainly unreasonable." *Bhd. of Locomotive Eng'rs*, 909 F.2d at 912. Section 214(c) permits employers to pay employees less than minimum wage only if their "earning or productive capacity is impaired by age, physical or mental deficiency, or injury." 29 U.S.C. § 214(c)(1). The DOL's regulations clarify that the employee's earning or productive capacity must be impaired "for the work to be performed." 29 C.F.R. § 525.3(d). *See also id.* ("Further, a disability which may affect earning or productive capacity for one type of work may not affect such capacity for another.").

9

Moreover, Plaintiff helps to defeat its own argument that the ARB's ruling announced a new rule. Plaintiff repeatedly cites the "DOL's own guidance to its investigators" in the form of the DOL's Field Operations Handbook §§64f00, which calls for consideration of "*staff notes on how the disability affects productivity.*" (Doc. No. 34 at 14) (emphasis by Plaintiff).  While Plaintiff relies on this quotation to argue it was permitted to rely on staff observations rather than medical or psychological evidence, Plaintiff ignores the second portion of this clause, which clearly identifies <u>which</u> staff observations are relevant.  As the ARB concluded, "measuring performance of a disabled individual and comparing it to a person without disabilities may tell us *that* the disabled individual is less productive, but it doesn't tell us *why* the disabled individual is less productive."  (Doc. No. 1-3 at 14) (emphasis in original).

While the ARB's ruling will require employers to gather more evidence than they previously did to justify payment of subminimum wages, a fair reading of the statute, the regulations, and other DOL guidance demonstrates that this requirement is not "new."  Moreover, the ARB's interpretation of this requirement is entitled to deference because it is not plainly unreasonable.

Next, Plaintiff argues the ARB's decision should be rejected as arbitrary and capricious because "[b]oth the ALJ and the ARB ignored the clear evidence as to the [Employees'] poor productivity," including evidence that the Employees failed to match the production standard "almost all of the time."  (Doc. No. 39 at 10).

But the ARB did not ignore this evidence.  (*See* Doc. No. 1-3 at 15) (discussing "the Employees' lower productivity").  The ARB instead noted that it was Plaintiff's "burden to show the connection" between the Employees' lower productivity and their disabilities and concluded "it failed to meet that burden."  (*Id.*).  In reaching this conclusion, the ARB stated there was "nothing inherent" in the jobs the Employees performed "that would make someone with blindness, an intellectual disability, or Asperger's Syndrome necessarily less productive at those tasks."  (*Id.* at 14-

10

15). The ARB further observed that Plaintiff claimed "three very different kinds of disabilities . . . all reduce productive capacity for the same type of work." (*Id.* at 15).

Plaintiff has not met its burden to show the ARB's conclusion was arbitrary or capricious or otherwise was contrary to the evidence presented. Therefore, I affirm the ARB's decision and grant summary judgment in Defendants' favor.

### 2. Liquidated Damages

Finally, Plaintiff argues the ARB erred in affirming the ALJ's award of liquidated damages because (1) the FLSA does not permit agencies to award liquidated damages, and (2) Plaintiff's Section 14(c) certificate provides it with a complete defense to liability. (Doc. No. 34 at 30-32). But Plaintiff's arguments are not persuasive.

Plaintiff's first argument has two parts. Plaintiff first contends the liquidated damages award was improper because the Employees filed a petition for review under § 214(c) and that subsection of the FLSA "only authorizes the petition for review process and does not address any remedies to be awarded." (Doc. No. 34 at 31). While it is true § 214(c)(5) does not list any specific remedies which might be provided during the administrative review process, Plaintiff does not contend this means that employees are not entitled to <u>any</u> remedies in administrative proceedings. Thus, the absence of a specific reference to liquidated damages in § 214(c) does not support Plaintiff's desired outcome.

Instead, as a matter of statutory construction, it is more logical to look to the section of the FLSA titled "Penalties." 29 U.S.C. § 216. That section provides civil remedies for violations of § 206's minimum wage requirement. When Congress stated in § 216(b) that an employer shall be liable in damages to employees who were not paid the required minimum wage pursuant to § 206, it was not required to first recount all the ways in which an employer might be found to have violated the minimum wage law.

11

The second part of Plaintiff's first argument is based upon the text of § 216(b) and its interplay with § 216(c). Section 216(b) states:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) or 218d of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) or 218d of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. Any employer who violates section 203(m)(2)(B) of this title shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages. An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b).

The two sentences of § 216(c) provide:

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages. !!The Secretary may bring an action in any court of competent jurisdiction to recover the amount of unpaid minimum wages or overtime compensation and an equal amount as liquidated damages.

29 U.S.C. § 216(c).

Plaintiff contends "Section 216(c) makes clear that the Secretary cannot award liquidated damages without filing an 'action' in a court of competent jurisdiction." (Doc. No. 34 at 31). But § 216 does not expressly prohibit the DOL from awarding liquidated damages during administrative proceedings. While Plaintiff reads the statutes differently, Plaintiff has not identified any case in which a court has rejected the DOL's interpretation. Nor does the plain language of the statute render the DOL's interpretation "plainly unreasonable." *Bhd. of Locomotive Eng'rs*, 909 F.2d at 912

12

(requiring courts "give considerable weight and due deference to the [DOL's] interpretation of the statutes it administers unless its statutory construction is plainly unreasonable").

The DOL has interpretated the FLSA, including § 216, as giving it the authority to award liquidated damages during administrative proceedings. (Doc. No. 1-3 at 24-25). That interpretation is entitled to deference. Therefore, I reject Plaintiff's argument and uphold the ARB's decision as to the award of liquidated damages.

### IV. CONCLUSION

For the reasons stated above, I affirm the decision of the ARB and order payment of minimum wages, back pay, and liquidated damages to the Employees, consistent with the ARB's 2017 and 2020 decisions. Therefore, I grant Defendants' motion for summary judgment, (Doc. No. 36), and deny Plaintiff's motion. (Doc. No. 34).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
